### GEISER MFG. CO. et al. v. FRICK CO.

#### (Circuit Court, E. D. Pennsylvania. January 31, 1899.)

#### No. 58.

PATENTS—ASSIGNMENT OF FUTURE INVENTIONS—CONSTRUCTION OF GRANT.

An employé of a manufacturing company granted to it all his "patents, inventions, and improvements," now existing and used by it "in the manufacture and sale of said hereinafter mentioned machinery"; also "all inventions and improvements in said machinery hereafter made" by him; also "all new designs of such machinery hereafter made by him" "while in the employ" of the company. The machinery referred to included, among other things, the "New Peerless Threshing Machines." *Held*, that the improvements mentioned in the second clause of the grant were to pass, even if made after the grantor ceased to be in the company's employ, while the "new designs" mentioned in the third clause were only to pass if made while his employment continued, and that such "improvements" included every invention not so divergent from the existing machine as to be radically distinctive or to constitute a new type.

In Equity.

Strawbridge & Taylor and Jos. C. Fraley, for complainant.
Francis Rawle and Frank P. Fish, for respondent.

DALLAS, Circuit Judge. The Geiser Manufacturing Company is the only substantial plaintiff, Frank F. Landis having been made a party to the bill merely for conformity. The suit is brought upon letters patent No. 541,101, dated June 18, 1895, and No. 562,625, dated June 23, 1896. The single question in the case is as to the Geiser Company's title to them, which rests upon a certain contract, the material part of which is as follows:

"Agreement in duplicate, made and entered into this 5th day of April, 1893, by and between F. F. Landis, of the borough of Waynesboro, county of Franklin, state of Pennsylvania, party of the first part, and the Geiser Manufacturing Company, a corporation existing under the laws of the state of Pennsylvania, and having its principal office in said borough of Waynesboro, party of the second part, as follows: The party of the first part, for the consideration hereinafter named, doth hereby give and grant unto the party of the second part, its successors and assigns, the exclusive right, within the United States of America, to use in the manufacture of the hereinafter mentioned machinery, and parts of same, in its factory at Waynesboro aforesaid, and in such branch factory or factories as it shall establish within said United States, all the patents, inventions, and improvements of him, the party of the first part, now existing and used by the party of the second part in the manufacture and sale of said hereinafter mentioned machinery; also the exclusive

right to use, as aforesaid, all inventions and improvements in said machinery hereafter made by the party of the first part; also all new designs of such machinery hereafter made by the party of the first part while in the employ of the party of the second part; also all inventions and improvements hereafter made by the party of the first part in the machinery covered by such new designs."

This extract contains the language by which the parties intended to identify the subject-matter of the grant; and the meaning of that language must, if possible, be accurately ascertained, in order that the ownership of the patents sued on may be rightly determined. The machinery referred to as "the hereinafter mentioned machinery, and parts of same," and as "said hereinafter mentioned machinery," and also as "said machinery," is that which is afterwards specifically designated as "Peerless Portable Engines, Domestic Engines, Peerless Traction Engines, New Peerless Threshing Machines," etc.; but, as both the patents in suit relate to threshing machines, the enumeration of other and wholly distinct machines is immaterial. Upon this understanding, and in view of the fact that Landis was not in the employ of the Geiser Company when he made the inventions in controversy, that portion of the grant with which this litigation is concerned appears to be of the exclusive right to use, in the manufacture of New Peerless Threshing Machines and parts of same, all inventions and improvements in those machines made by Landis after the 5th day of April, 1893. These patents are for inventions in threshing machinery, and were made by Landis after that date. Are they for improvements in New Peerless Threshing Machines? This is the crucial question in the cause, and, that it may be rightly solved, it is necessary—First, to define what the parties meant by "improvements in New Peerless Threshing Machines"; and, second, to determine whether that phrase, as so defined, is or is not inclusive of the inventions to which this case relates.

The conclusion which I have reached upon the first of these subjects is, in my opinion, strongly supported by the extrinsic evidence; but it is unnecessary to refer to it, for, without looking beyond the contract itself, I believe the intent of the parties may be clearly discerned. It provided that Landis was to be in the employ of the Geiser Company, with general supervisory power; and it is evident to me that it was contemplated that during the continuance of that employment any inventions and improvements which he might make would, if capable of such application, be applied by him to the New Peerless Machines of that company, and that it would have the exclusive right to use them. Landis covenanted to "contribute his best skill and ability," while in the employ of the Geiser Company, "to promote its welfare"; and if, while so employed, he had assigned to a rival manufacturer any of his inventions and improvements which he might have appropriated to its New Peerless Machines, he would have rendered himself liable to the charge of having acted in fraud of his agreement, and could not have refuted that charge by invoking a narrow interpretation of his grant, for the purpose of excluding from its operation any inventions and improvements which his skill and ability had devised and which might have been so appropriated. Such was the nature and extent

of his obligation while his employment existed, and it became no less stringent and comprehensive when that employment ceased. Improvements made after its termination were granted precisely as were those previously made. When the contract was entered into, the relation of the parties, as employer and employed, was established for an indefinite period; and although, no doubt, they had the subsistence of that relation primarily in view, yet it was not proposed that its discontinuance should vary or affect the right of the Geiser Company to all improvements made by Landis. Furthermore, improvements made after the date of the contract were as broadly granted as were those which were then existing. The only restrictions were that the existing improvements should be then "used" in said machinery, and that the improvements thereafter made should be "in said machinery." Notwithstanding the variation in the language of these phrases, which resulted from the fact that in the one instance things in esse, and in the other things in posse, were referred to, it is obvious to me that they were intended to have the same significance. There is no good reason to suppose that the existent improvements were to be of one kind or class, and those thereafter to be made of another. As to both, the company was desirous of securing "all inventions and improvements" which might be used in its New Peerless Machines, and all of these Landis agreed that it should have. Capability of being "used" was the criterion which the parties had in mind, as applicable both to existing and to future improvements. As to the former, this capability was absolutely determined by actual use; and, as to the latter, it was conclusively assumed to result from their being "improvements in said machinery." As to both, I repeat, the thought was the same: Improvements which were then used in said machinery, or which, if thereafter made, could be so used, were to pass under the contract. Even "new designs," if made by Landis while employed by the company, were granted. If made after his employment ceased, they were impliedly reserved; but this reservation does not derogate from the grant of improvements. Its pertinent effect is only to show that any invention not amounting to a new design was to be regarded as an improvement "in said machinery," but that, if a wholly new type—an entirely distinct character of "such machinery" —were created, it was to belong to Landis himself, unless he had made it while in the company's service. The parties were dealing with machinery, not with patents, and the word "improvements" is not to be technically construed, but to be understood in its ordinary sense. Being so understood, it is broadly inclusive. It comprises anything and everything by which the subject to which it is related may be improved, and embraces improvements to main features as well as in minor details. It necessarily imports modification, and the alterations may consist either in omission of parts, in their readjustment, or in the substitution of new parts for old ones, or in all of these. Yet the thing altered, though it may be greatly changed, is not, in common apprehension, regarded as a different thing, and does not, in common speech, acquire a different name. Such changes, for instance, if made in the New Peerless Threshing Machine, would not be subversive of its individuality; and though, by reason of their being

made, it might come to be described as an "improved New Peerless," the entity would remain the same,—it would still be a "New Peerless Machine," and by that name it would still be designated. I am fully persuaded that this interpretation of the phrase, "all inventions and improvements in said machinery," correctly exhibits the meaning which the parties intended it to have, and that their understanding was that nothing could be a new design which that phrase, as, thus interpreted, comprehended. Improvements pertain to old designs. But to constitute a new one the divergence from the old must be thoroughly typical, and the difference in plan and structure be radically distinctive; and it is only by thus restricting the scope of the term "new design" that "all improvements" can be excluded from its embrace, and the grant be given harmonious construction and consistent effect.

The views which have been expressed are decisive. The inventions in question are plainly included in the grant of "improvements in New Peerless Threshing Machines," as that phrase has now been defined. As both parties claim to own the patents, neither, of course, questions their validity, and the novelty and utility of the inventions which they cover are therefore necessarily conceded. It is true that their application to a New Peerless Threshing Machine would involve the making of very considerable and important changes in it, but they would not transform it. It would not become a new, or even a different, design. Each of them separately, or all of them at once, might be incorporated in it without destroying its identity. It may be admitted that it would be much improved, but it would, nevertheless, be an improved Peerless Machine, and nothing else.

The defense of laches or estoppel is wholly without merit. There was no unreasonable or injurious delay in filing the bill. The contract between Landis and the Geiser Company was made upon April 5, 1893. The contract between Landis and the Frick Company, the defendant, is dated March 19, 1895. That company, claiming under its later contract, but with full knowledge of the earlier one, proceeded to manufacture and sell. The complainant, neither actually nor apparently, acquiesced in this, nor did the respondent suppose that it did, but, on the contrary, relied upon the validity of its own license, and was "willing to take chances." It denied the complainant's right, and challenged an assertion of it. The bringing of this suit was a timely response to that challenge, and the defendant must abide the result of the contest it provoked. Decree for complainant.